**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| LOU ANN LANDEL and ALVIN L. LEWIS JR., on behalf of themselves and all others similarly situated, | ) ) ) ) Civil Action No.: 4:25-cv-00096-JAR |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| OLIN CORPORATION, OLIN PENSION AND CEOP ADMINISTRATIVE COMMITTEE, and JOHN/JANE DOES 1-10, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

COME NOW Defendants Olin Corporation ("Olin") and Olin Pension and CEOP Administrative Committee ("Committee") (collectively, "Defendants"), and for their Reply in Support of their Motion to Dismiss Plaintiffs' Amended Complaint, pursuant to Fed. R. Civ. P. Rule 12(b)(6), state as follows:

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

    I.    The Plan's Two-Year Limitations Period Bars Plaintiffs' Claims. ........................ 1

    II.    Plaintiffs Fail to State a Claim for Violation of 29 U.S.C. § 1055. ........................ 2

        A.    Plaintiffs' Request that the Court Insert an "Inherent" Reasonableness Requirement Contradicts ERISA and its Regulations. ............................... 2

            1.    The Established Meaning of "Actuarial Equivalence" Does Not Have an "Inherent" Reasonableness Requirement. ........................ 3

            2.    The Statute and Regulations Prove that There is No "Inherent" Reasonableness Requirement, and Plaintiffs' Interpretation Renders These Statutes and Regulations Redundant and Meaningless. ................................................................................ 4

            3.    Congress Required that Actuarial Assumptions for QJSA Payments Be Set Forth in the Plan and Did Not Require Them to be Periodically Updated. ................................................. 6

            4.    Actuarial Standards Do Not Support Plaintiffs' Argument. ........... 9

        B.    Recent, Well-Reasoned Authority Supports Dismissing Plaintiffs' Claims. ....................................................................................................... 9

    III.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty. ........................... 12

        A.    The Committee Did Not Owe or Breach a Fiduciary Duty When Following Plan Terms. ................................................................................ 12

        B.    Olin Does Not Owe a Fiduciary Duty as Plan Sponsor. ........................... 13

        C.    Plaintiffs Do Not State a Claim for a Prohibited Transaction. ................. 14

        D.    There is No "Loss to the Plan" to State a Claim under 29 U.S.C. § 1132(a)(2). 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. U.S. Bancorp*,
   635 F. Supp. 3d 742 (D. Minn. 2022) ............................................................................... 11

*Angell v. John Hancock Life Ins. Co.*,
   421 F. Supp. 2d 1168 (E.D. Mo. 2006) *aff'd,* 223 F. App'x 527 (8th Cir. 2007) ...................... 2

*Belknap v. Partners Healthcare System, Inc.*,
   588 F. Supp. 3d 161 (D. Mass. 2022) ........................................................................ 4, 9, 10

*Braden v. Walmart*,
   588 F.3d 585 (8th Cir. 2009) ......................................................................................... 14

*Ciecalone v. Met. Life Ins. Co.,*
   2011 WL 1344061 (E.D. Mo. April 8, 2011) ..................................................................... 15

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 (1986) ....................................................................................................... 7

*Covic v. FedEx Corp.*,
   774 F. Supp. 3d 954 (W.D. Tenn. 2024) ............................................................................ 9

*Drummond v. Southern Co. Servs., Inc.*,
   2024 WL 4005945 (N.D. Ga. July 30, 2024) .................................................................. 9, 10

*Duffy v. Anheuser-Busch Companies*, LLC,
   449 F. Supp. 3d 882 (E.D. Mo. 2020) ............................................................................. 10

*Franklin v. Duke Univ.*,
   2024 WL 1740479 (M.D.N.C. Apr. 23, 2024) ................................................................... 11

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000) ..................................................................................................... 14

*Johnston v. Paul Revere Life Ins. Co.*,
   241 F.3d 623 (8th Cir. 2001) ......................................................................................... 12

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) ........................................................................................... 7, 14, 15

*Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pension Comm.*,
   2024 WL 5410419 (E.D. Mich. Apr. 17, 2024) ............................................................... 9, 10

*Scott v. AT&T*,
   No. 4:25-cv-00096 (N.D. Cal. July 9, 2025) ........................................................... 11, 12, 13

*Stephens v. U.S. Airways Group, Inc.*,
   644 F.3d 437 (D.C. Cir. 2011) ....................................................................................... 3, 6

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ..................................................................................................... 15

*Trustees of the Graphic Communications Int'l Union Upper Midwest Local 1 M Health &
   Welfare Plan v. Bjorkedal*,
   516 F.3d 719 (8th Cir. 2008) .................................................................................... 14, 15

*Urlaub v. CITGO Petroleum Corp.*,
   2022 WL 523129 (N.D. Ill. Feb. 22, 2022) .................................................................. 10, 11

*Whetstone v. Howard Univ.*,
   2024 U.S. Dist. LEXIS 164095 (D.D.C. Sept. 12, 2024) ........................................................ 2

**Statutes**

26 U.S.C. § 401(a)(25)................................................................................ 6, 7, 8, 11, 13

29 U.S.C. § 1002(21) ................................................................................................ 12

29 U.S.C. § 1002(21)(A)........................................................................................... 12

29 U.S.C. § 1024(b)(4) ............................................................................................... 2

29 U.S.C. § 1055 ..................................................................................................... 2, 4

29 U.S.C. § 1055(d) ...................................................................... 1, 2, 5, 6, 11, 12

29 U.S.C. § 1055(e) .................................................................................... 1, 2, 11

29 U.S.C. § 1055(g) ........................................................................................ 10, 11

29 U.S.C. § 1055(g)(3) ..................................................................................... 4, 6, 8

29 U.S.C. § 1083(h) ................................................................................................... 5

29 U.S.C. § 1084(c)(3)................................................................................................ 5

29 U.S.C. § 1085(c)(3)(A) .......................................................................................... 5

29 U.S.C. § 1085a(c)(3) ............................................................................................. 5

29 U.S.C. § 1104 ...................................................................................................... 12

29 U.S.C. § 1106(a) ...................................................................................... 12, 14, 15

29 U.S.C. § 1106(b) .......................................................................................... 12, 14

29 U.S.C. § 1109 ...................................................................................................... 12

29 U.S.C. § 1132(a)(2).......................................................................................... 12, 15

29 U.S.C. § 1393(a)(1)................................................................................................ 5

**Regulations**

26 C.F.R. § 1.401(a)(4)-12......................................................................................... 3

**Other Authorities**

IRS Rev. Rul. 79-90.................................................................................................... 8

**INTRODUCTION**

Plaintiffs' theory is based upon what Plaintiffs believe ERISA <u>should</u> say, not what it <u>does</u> say. Plaintiffs want this Court to read into the term "actuarial equivalent" a statutory requirement that employers periodically update their plans to use current actuarial assumptions. The accepted meaning of actuarial <u>equivalence</u> is that benefits are calculated using the <u>same</u> assumptions – that's what makes them equivalent. Plaintiffs do not argue that the assumptions in Olin's Plan were unreasonable when the Plan was created. Their only argument is that Olin should revise the Plan to make its assumptions more current. Nothing in ERISA or its regulations requires this.

Plaintiffs' claim turns on the unsupported assertion that "[t]he concept of actuarial equivalence is imbued with an inherent standard of reasonableness." Plaintiffs' Opposition to Defendants' Motion to Dismiss, Dkt. 24 ("Opp."), p. 2.[1] But the fact that Congress and agencies legislated that assumptions must be reasonable or current in other contexts proves that they do not interpret this as "inherent" in "actuarial equivalent," and Congress's omission of such requirement in 29 U.S.C. § 1055(d) and (e) was intentional. What Congress chose not to adopt in ERISA's carefully articulated and comprehensive statutory scheme, this Court should not do by judicial fiat.

**ARGUMENT**

**I.      The Plan's Two-Year Limitations Period Bars Plaintiffs' Claims.**

Plaintiffs argue that their claim did not accrue when they first received their benefits, because "[they] could not have discovered that Olin was using archaic tables and stale interest rates simply by reading their benefit statements." Opp., p. 10. But they concede that it was "Plan documents showing the outdated assumptions" that put them on notice of the outdated mortality tables. Opp., pp. 10-11. Had they reviewed the Plan, they would have discovered that it defines

---

[1] Citations to pages in both Defendants' Memo and Plaintiffs' Opposition are to the page number on the bottom of the page of the brief, and not the page number on the ECF heading.

"Actuarial Equivalent" based upon the mortality tables and interest rates they now allege are "antiquated." Plan, §1.1. Plaintiffs provide no reason for failing to review the Plan, which they were entitled to receive upon request. *See* 29 U.S.C. § 1024(b)(4).

Plaintiffs cite nonbinding authority for the proposition that receipt of a benefit check alone is insufficient to trigger the statute of limitations. Opp., pp. 10-11. But in those cases, the plaintiffs alleged that the formulas used were not apparent from the plan documents. *See, e.g., Whetstone v. Howard Univ.*, 2024 U.S. Dist. LEXIS 164095, at *13 (D.D.C. Sept. 12, 2024) ("[plaintiff] alleges that the Plan 'does not provide the formula it uses to determine optional forms of benefit like JSAs'"). Here, in contrast, the mortality tables and interest rates are set forth in the Plan document.[2]

The Eighth Circuit has squarely rejected Plaintiffs' argument that "each failure to review or update assumptions constitutes a new breach." Opp., p. 12. In *Angell v. John Hancock Life Ins. Co.*, 421 F. Supp. 2d 1168 (E.D. Mo. 2006), *aff'd,* 223 F. App'x 527 (8th Cir. 2007), the Court rejected this "continuing violation" theory. It held that "each time" the defendant paid benefits, "Defendant was repeating an identical act, so that additional payments did not restart the statute of limitations." *Id.* at 1176. Accordingly, Plaintiffs' claims did not renew upon each alleged underpayment of benefits and are barred by the Plan's two-year limitations period.

## II.     Plaintiffs Fail to State a Claim for Violation of 29 U.S.C. § 1055.

### A.     Plaintiffs' Request that the Court Insert an "Inherent" Reasonableness Requirement Contradicts ERISA and its Regulations.

Plaintiffs' argument – that 29 U.S.C. §§ 1055(d) and (e)   contain an "inherent"

---

[2] Plaintiffs falsely assert that "Defendants are uncertain as to which assumptions were used to determine benefits." Opp., p. 11. There is no uncertainty, just variability depending upon the Olin company where the participant worked. The Plan defines "Actuarial Assumptions" as the 1983 GAM Table and 9½% interest, except as set forth in Appendix J.  *See* Plan (Exhibits 1 and 2), at § 1.1. Appendix J contains company-specific terms, some of which specify different actuarial assumptions. While neither Plaintiff alleges which company they worked for, they could readily look up their company in Appendix J to identify the applicable assumptions.

"reasonable" requirement – contradicts ERISA, regulations, and standards of actuarial practice. Plaintiffs focus on scattered uses of the word "reasonable" in inapplicable regulations to construct a façade of unwritten "rules." No provision of ERISA or regulations creates the requirement that Plaintiffs urge the Court to adopt. Rather, ERISA leaves the actuarial assumptions up to the employers, which are to be specified in the Plan in a way that precludes employer discretion.

> **1.      The Established Meaning of "Actuarial Equivalence" Does Not Have an "Inherent" Reasonableness Requirement.**

Plaintiffs argue that "the term 'actuarial equivalence' must mean something." Opp., p. 13. In fact, it is a "term of art" with an "established meaning": "Two modes of payment are actuarially equivalent when their present values are equal under a given set of actuarial assumptions." *Stephens v. U.S. Airways Group, Inc.*, 644 F.3d 437, 440 (D.C. Cir. 2011). *See also* 26 C.F.R. § 1.401(a)(4)-12; Defendants' Memorandum in Support of their Motion to Dismiss Plaintiffs' Amended Complaint, Dkt. 21 ("Memo"), pp. 12-13 (citing industry sources defining "actuarial equivalence"). Indeed, Plaintiffs have adopted this *Stephens* definition. Am. Compl., ¶ 30 (citing *Stephens*).[3] All of these sources agree that "actuarial equivalence" means that the present value is the <u>same</u> when using the <u>same</u> assumptions. Nowhere does this established definition qualify <u>what</u> assumptions must be used. Rather, the word "equivalent" is one of relativity, comparing one item to another. The use of the <u>same</u> actuarial assumptions is what makes the present values <u>equivalent</u>.

By way of example, if a claimant's SLA payment is reduced to present value using an interest rate of 5% and the 1983 GAM mortality table, and the QJSA payment is reduced to present value using the same interest rate and same mortality table, then the present values are equivalent,

---

[3] In their brief, Plaintiffs say that *Stephens* held that "actuarial equivalence means that two different forms of benefit have the same present economic value when calculated using ***reasonable assumptions*** . . ." Opp., p. 14 (emphasis added). *Stephens* says no such thing. Plaintiffs have added the word "reasonable," which was not in the quote in *Stephens*.

because they were calculated using the same assumptions. Plaintiffs' assertion that the plan should have used different assumptions to reach a different present value does not bear upon whether the present values are equivalent. To illustrate, if X=Y, and one multiplies both sides of the equation by the same number, both sides will still be equal (*e.g.*, 2X=2Y, 3X=3Y). A plaintiff may dispute which multiplier should be used, but the equation remains equivalent regardless of what multiplier is used. For this reason, Plaintiffs' argument that "the present value would not be accurate" if *"outdated* mortality data is used" misses the mark. Opp., p. 14. Actuarial equivalence asks whether the present values are equivalent, not what the substantive present value amount should be.

As to <u>what</u> assumptions must be used to calculate present value, Congress and agencies have legislated the actuarial assumptions that must be used for certain purposes, requiring that certain – but not all – actuarial assumptions be "reasonable" or current. Memo, pp. 14-19. If actuarial assumptions were <u>inherently</u> required to be reasonable, then why would Congress and agencies have enacted regulations whose sole purpose is to mandate that a plan use reasonable assumptions for these specified purposes? Plaintiffs do not even attempt to answer this question.

**2.   The Statute and Regulations Prove that There is No "Inherent" Reasonableness Requirement, and Plaintiffs' Interpretation Renders These Statutes and Regulations Redundant and Meaningless.**

Plaintiffs' argument that actuarial assumptions must inherently be reasonable or current would render multiple provisions of ERISA and its regulations surplusage or meaningless.

For lump sum benefits – contained in the same statutory section as the requirement that QJSAs be "actuarial equivalent" to the SLA – Congress required that plans use current actuarial assumptions (i.e., the published Treasury Assumptions). *See* 29 U.S.C. § 1055(g)(3). Congress's decision to mandate the use of current Treasury Assumptions within 29 U.S.C. § 1055 for lump sum benefits but not for annuities is dispositive. Memo, pp. 14-15; *see also Belknap v. Partners Healthcare System, Inc.*, 588 F. Supp. 3d 161, 172 (D. Mass. 2022) (Congress's differential

treatment of annuities and lump sum benefits "should be presumed to be significant"). Plaintiffs' argument also renders redundant the statutes where Congress required that plans use "reasonable" actuarial assumptions to determine funding obligations and to calculate withdrawal liability. 29 U.S.C. §§ 1083(h), 1084(c)(3), 1085a(c)(3), 1085(c)(3)(A), 1393(a)(1); Memo, p. 16. If Plaintiffs were correct that actuarial assumptions must inherently be reasonable, there was no reason for Congress to enact express reasonableness requirements. Plaintiffs have no response to this point.

Plaintiffs' argument that scattered regulations somehow prove that the "concept of actuarial equivalence is imbued with an inherent standard of reasonableness" also backfires. Opp., p. 2. The fatal flaw with their argument is that these express reasonableness requirements for other actuarial calculations prove, yet again, that "reasonableness" and "currentness" are not inherent in the meaning of "actuarial equivalence." Plaintiffs' argument would render superfluous the requirements in numerous regulations that certain actuarial assumptions be "reasonable" or based on the current Treasury Assumptions. *See* Memo, pp. 18-19 (discussing regulations).

Though Plaintiffs relied upon these regulations in their Complaint (Am. Compl. ¶ 47), they now change their tune and say these regulations are irrelevant. Faced with Defendants' showing that these regulations prove that reasonableness or currentness is not inherent in the meaning of actuarial equivalence, Plaintiffs now make the contradictory argument that "Congress's use of the word 'reasonable' in other ERISA contexts" is irrelevant because these regulations "do not directly address the annuity-equivalence mandate of § 1055(d)" and they "do not employ the phrase 'actuarial equivalent.'" Opp., pp. 14, 18. But at the same time, Plaintiffs continue to argue the opposite, saying that "regulations discussing actuarial assumptions support [their argument that "actuarial equivalence is imbued with an inherent standard of reasonableness"] by repeatedly referencing actuarial assumptions that are 'reasonable.'" *Id.* at 2. Plaintiffs cannot have it both ways. Their theory is that actuarial assumptions must be reasonable in order for the present values

5

to be actuarially equivalent. Am. Compl., ¶¶ 30, 46. Plaintiffs staked their claim on tying actuarial equivalence to the assumptions that are used; they cannot now credibly argue these regulations are irrelevant because they use the term "actuarial assumptions" rather than "actuarial equivalent."

> **3.     Congress Required that Actuarial Assumptions for QJSA Payments Be Set Forth in the Plan and Did Not Require Them to be Periodically Updated.**

As stated, actuarial equivalence means that two or more payments' "present values are equal under a given set of actuarial assumptions." *Stephens*, 644 F.3d at 440. The "given set of actuarial assumptions" to be used depends upon which specific provision of ERISA is at issue.

For payment of lump sum benefits, ERISA requires that plans use the current assumptions set forth in the mortality tables and interest rates published by the Treasury. 29 U.S.C. § 1055(g)(3). For certain other provisions, such as plan funding, or withdrawal liability, ERISA and its regulations provide that the plan should apply "reasonable" assumptions. Memo, pp. 16-19 (discussing statutes and regulations). In each of those instances – where the assumptions are not set forth in the plan, such that an administrator could otherwise select new assumptions each time it made these calculations – it makes sense that Congress or the agency would impose "reasonable" or "current" requirements to limit administrator discretion.

With respect to the QJSA, because the actuarial assumptions must be set forth in the plan, neither Congress nor the agencies saw fit to legislate the content of those assumptions. Congress chose to regulate the actuarial assumptions for QJSA calculations by requiring that the assumptions be disclosed in the plan and that benefits be "definitely determinable" and nothing more.

In their Opposition, Plaintiffs assert that Defendants' argument causes the "definitely determinable" requirement of 26 U.S.C. § 401(a)(25) to somehow "swallow § 1055(d)" and render its actuarial equivalence requirement "surplusage." Opp., p. 16. In fact, it's the opposite. The two requirements fit together hand in glove. As explained, actuarial equivalence requires calculating

6

equivalent present values of two or more income streams using the same assumptions. And 26 U.S.C. § 401(a)(25) requires that the assumptions that will be used to calculate those values must be "specified in the plan in a way which precludes employer discretion."

Plaintiffs' retort is that employers could adopt any assumptions they want, including "mortality data from the 1600s or an interest rate of 99%." Opp., p. 2. This is a hyperbolic, slippery slope argument about an imaginary problem that does not exist. There is no evidence or even suggestion that any employer uses mortality tables from the 1600s (if such tables even exist). No rational employer would offer a plan with such far-fetched assumptions,[4] and any employer that attempts to do so risks consequences in the competitive employment marketplace and the potential that the IRS would determine that the plan was not qualified for tax purposes. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 852 (1986) (Court would not issue a rule that is based "out of fear of where some hypothetical 'slippery slope' may deposit us.").

Plaintiffs argue that "if employers were free to use any assumptions they wish, they could manipulate the formulas to reduce benefits." Opp., p. 14. Once again, this slippery slope has no basis in reality. The requirement in 26 U.S.C. § 401(a)(25) that the assumptions be specified "in a way which precludes employer discretion" safeguards against any such employer manipulation. The only risk of "manipulation" here is Plaintiffs' argument that Defendants should substitute new assumptions for the disclosed assumptions to manipulate the value of their benefits.

Plaintiffs also argue the assumptions must be "periodically reviewed." Opp., p. 13. Not surprisingly, there is no requirement in ERISA that plan documents be "periodically reviewed."

---

[4] ERISA does not require employers to offer benefit plans. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). It would be senseless for an employer to offer a voluntary benefit but eviscerate its value by using a 99% interest rate. There is no suggestion any employer would adopt such a plan. Why would employers go through these gymnastics and use ludicrous assumptions to provide illusory pension benefits, when they could simply choose not to provide pension benefits at all?

7

To the contrary, this would contradict the requirement that assumptions be definitely determinable and preclude employer discretion, and it is inconsistent with ERISA's provisions limiting employers' ability to amend plan documents. Memo, p. 22. Plaintiffs try to assure the Court that they "are not suggesting that benefit formulas change with every fluctuation in the interest rate." Opp., p. 2. But that is the import of their claim that a plan can be held liable for violating ERISA if it uses "outdated" assumptions. Plaintiffs offer no logical limitation or textual support on how often – or under what circumstances – they believe interest rates or mortality data must be updated.

Because assumptions must be "definitely determinable" and "specified in the plan in a way which precludes employer discretion," 26 U.S.C. § 401(a)(25), any updates to the actuarial assumptions would have to be by plan amendment. And any amendment updating actuarial assumptions may reduce benefits for some participants, which could run afoul of ERISA. Memo, p. 22. Plaintiffs propose that plans could use "variable assumptions" tied to the Treasury rates, or "greater of" formulas. Opp., pp. 17-19. But this would destroy predictability for both employers and employees, as the value of benefits would fluctuate year-to-year with mortality and interest rates. If Congress intended for all plans to adopt variable assumptions to comply with ERISA, it could have said so, as it did for lump sum distributions in 29 U.S.C. § 1055(g)(3). Moreover, the IRS has stated that plans can satisfy the "definitely determinable" requirement by using either "fixed standards" specified in the plan or "a variable standard which provides for self-adjusting changes which are independent of employer discretion." IRS Rev. Rul. 79-90. While employers certainly may choose variable standards, the IRS has made clear they are not required to do so.

Ultimately, Plaintiffs' argument comes down to this sentence: "It simply cannot be that plans *never* need to update outdated mortality data." Opp., p. 2. In other words, while nothing in ERISA or any regulation requires plans to update their actuarial assumptions, Plaintiffs believe they should, and they ask this Court to so hold. Plaintiffs' advocacy for what would be a sweeping

8

legislative change should be directed to Congress, not the Court.

### 4.    Actuarial Standards Do Not Support Plaintiffs' Argument.

Plaintiffs state that "actuarial equivalence" is "a technical term of art in actuarial practice." Opp., p. 14. Yet they ignore that Defendants cited the definitions of many professional actuarial groups – all of which define the phrase as having the same present value under a selected set of actuarial assumptions, without qualifying what those assumptions must be. Memo, pp. 12-13.

The Actuarial Standards of Practice ("ASOPs") that Plaintiffs invoke do not support their theory. As Olin previously discussed, ASOP 27 contains detailed provisions that only apply when actuaries are selecting actuarial assumptions for plans to follow. But when it comes to making individual benefit calculations, there is no ASOP, because actuaries must apply the assumptions set forth in the Plan. *See* Memo, pp. 19-20. Plaintiffs do not address this point, but instead double down on their conclusory statement that the ASOPs "reflect a consensus, within the actuarial community, that assumptions used for these determinations be reasonable," citing back to those same ASOPs. Opp., p. 18. They also cite ASOP 1, which is the "Introductory Actuarial Standard of Practice," which simply says that in "many instances" the ASOPs call for certain actions to be "reasonable." ASOP 1, § 2.10; Opp., n. 6. This introductory statement that some ASOPs require reasonableness only reinforces the point that there is no such requirement where not specified and, in particular, when applying assumptions specifically delineated in a plan.

### B.    Recent, Well-Reasoned Authority Supports Dismissing Plaintiffs' Claims.

In its opening brief, Olin extensively cited several recent cases that rejected claims like Plaintiffs' after a detailed examination of ERISA.[5] These cases contain thorough analyses of the

---

[5] *See Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161 (D. Mass. 2022); *Drummond v. Southern Co. Servs., Inc.*, 2024 WL 4005945 (N.D. Ga. July 30, 2024); *Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pension Comm.*, 2024 WL 5410419 (E.D. Mich. Apr. 17, 2024); *Covic v. FedEx Corp.*, 774 F. Supp. 3d 954 (W.D. Tenn. 2024).

statutory text and regulations and are persuasive authority that should be followed.

Plaintiffs counter that "[o]ver a dozen courts have refused to dismiss" similar claims, Opp., p. 15, but the opinions Plaintiffs cite often contain little substantive analysis. Respectfully, the Court should decline to follow this authority and follow the more well-reasoned authority that has rejected this type of claim. The four opinions that Plaintiffs choose to discuss in detail in their Opposition each rest upon a flimsy and unpersuasive analysis and should not be followed.

*Duffy v. Anheuser-Busch Companies*, *LLC*, 449 F. Supp. 3d 882 (E.D. Mo. 2020) – a five-year old case that Plaintiffs chose not to cite in the string of cases in their Amended Complaint – is inapposite because the defendant there did not contest the plaintiff's argument that "actuarial equivalent" requires current assumptions. Memo, pp. 23-24. Instead, the defendant agreed that ERISA "requires that the actuarial adjustments be reasonable in the aggregate" and argued that the plaintiff must show "that the Plan's assumptions lead to a result that could not have been produced by any reasonable set of actuarial assumptions." 449 F. Supp. 3d at 888, 890. Because the parties assumed "reasonableness" was required, the Court did, too. Neither the defendant nor the Court addressed any of the authority or arguments raised by Defendants here. Nor did the Court have the benefit of recent cases like *Belknap, Reichert* and *Drummond*, which addressed these arguments in detail. Thus, *Duffy* is of little precedential value and should not be applied.

*Urlaub* is not persuasive because the court performed no analysis on the core issue of what Congress meant by the phrase "actuarial equivalent." *See Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022). Instead, the court based its ruling upon its apparent gut reaction that "it cannot possibly be the case that ERISA's actuarial equivalence requirements allow the use of unreasonable mortality assumptions," relying only upon an unhelpful dictionary definition of "equivalent," and the slippery slope argument that employers might use a mortality table "from the sixteenth century." *Id.* The court said nothing about § 1055(g)

10

or the numerous statutes and regulations that expressly require "reasonable" actuarial assumptions and methods in other contexts. *Id.* at *6-7. Further, the parts of the opinion that Plaintiffs quote are from a different claim in *Urlaub,* which involved the date used to determine actuarial equivalence when an employee retires early and has nothing to do with the issues here. *Id.* at *4-5; Opp., p. 20.

The *Franklin* court simply surveyed other opinions and concluded that "many courts have applied a 'reasonable assumptions' standard at the motion to dismiss stage." *Franklin v. Duke Univ.*, 2024 WL 1740479, at *2 (M.D.N.C. Apr. 23, 2024). Like the *Urlaub* court, the *Franklin* court said nothing about the contrast between § 1055(g) and §§ 1055(d) and (e), nor did it discuss the impact of the reasonableness requirements in ERISA, the regulations, or the requirement in 26 U.S.C. § 401(a)(25) that actuarial assumptions be set forth in the plan. *Id.*

In *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742 (D. Minn. 2022), the court based its holding on regulations which it acknowledged were "not enforceable under ERISA" or only require "reasonableness in other contexts." *Id.* at 752. This treatment of the regulations runs counter to established rules of statutory interpretation and is not persuasive. The court also invoked the outlandish example that an employer could adopt "extreme" assumptions "like a 99% discount rate," stating that "some limits on the discretion of plan administrators in the selection of actuarial methodology are necessary." *Id.* at 754 (citation omitted). The court completely overlooked 26 U.S.C. § 401(a)(25), which requires assumptions to be in the plan and provides the limit on discretion that the *Adams* court wrongly thought was missing.

Finally, Plaintiffs submitted as supplemental authority *Scott v. AT&T*, No. 4:25-cv-00096 (N.D. Cal. July 9, 2025), another nonbinding authority. *Scott* is not persuasive, because it relies upon inapplicable regulations and ASOPs using the word "reasonable" without considering that the definition of "equivalence" only requires that the assumptions be the same. *Scott* did not consider 26 U.S.C. § 401(a)(25) or the fact that assumptions must be set forth in the plan. Notably,

11

while *Scott* allowed the claim under 29 U.S.C. § 1055(d) to proceed, the court granted defendants summary judgment on the fiduciary duty claim. Dkt. 25-1, at p. 13-14.

## III.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty.

If the Court dismisses Count I, Count II necessarily fails as well. Memo, p. 24. Plaintiffs do not dispute this point. But in any event, the Court must dismiss Count II because Plaintiffs do not adequately plead that Defendants owed and breached a fiduciary duty.[6]

### A.    The Committee Did Not Owe or Breach a Fiduciary Duty When Following Plan Terms.

As established in Defendants' Memo, ERISA does not require a fiduciary to disobey plan terms which allegedly may not comply with ERISA. Memo, pp. 27-28 (citing cases). Plaintiffs argue "[t]his case is different" because Defendants allegedly "failed to re-evaluate or update those assumptions for decades[.]" Opp., p. 24. That is wrong. Olin restated the Plan in 2014 (Exhibit 2) and again in 2020 (Exhibit 1), and both versions provide specifically that "Actuarial Equivalence" is based upon an interest rate of 9½% and the 1983 GAM Table, except as provided in Appendix J. Plan, § 1.1. The Committee applied these restated terms. As such, though Plaintiffs try to paint the Committee as "asleep at the wheel" and "blindly" applying decades-old Plan terms, in fact the Committee applied terms that Olin restated in 2020, during the putative class period.

Applying Plan terms cannot give rise to a breach of fiduciary duty, because the Committee did not have discretion to deviate from those terms. Under ERISA, there can be no breach of fiduciary duty unless a plan administrator is exercising "discretionary authority or control." 29 U.S.C. § 1002(21)(A). "Discretion is the benchmark for fiduciary status under ERISA pursuant to . . . 29 U.S.C. § 1002(21)." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir.

---

[6]  A finding that defendants are not acting as fiduciaries would dispose of Count II in its entirety, including the claims under 29 U.S.C. §§ 1104, 1106(a)-(b), 1109, and 1132(a)(2).

12

2001) (citation and quotation omitted). The Committee had no discretion and had to use the assumptions in the Plan – because the law requires that the "assumptions are specified in the plan in a way which precludes employer discretion." 26 U.S.C. § 401(a)(25). Plaintiffs cannot state a claim based on the Committee applying non-discretionary terms in the restated Plan documents. *See also Scott*, p. 14 (following plan terms is not discretionary and so is not a fiduciary act).

### B.      Olin Does Not Owe a Fiduciary Duty as Plan Sponsor.

As set forth in Defendants' Memo, Olin does not owe a fiduciary duty as the plan sponsor when setting or amending Plan terms. Memo, pp. 25-27. Plaintiffs do not dispute, and essentially concede, that Olin is not a fiduciary when setting Plan terms. Opp., p. 25. Rather, Plaintiffs argue that Olin owed a fiduciary duty to monitor the Committee. *Id.*  But Plaintiffs' argument that Olin has a "fiduciary duty to monitor" puts the cart before the horse, because Plaintiffs have not established that Olin is a fiduciary. The Plan provides – and Plaintiffs do not dispute – that the Committees are the sole fiduciaries. Memo, pp. 25-26.

Plaintiffs' supposed "failure to monitor" claim misses this salient point: Olin restated the Plan in 2014 and 2020 (Exhibits 1, 2). Plaintiffs argue that Defendants "failed to re-evaluate or update those assumptions for decades" and "failed to review the terms of the Plan." Opp., pp. 22, 24. That is wrong. Olin restated the Plan and re-adopted its assumptions in 2020, during the purported class period, in its settlor function, and the Committee applied these newly restated terms. While Plaintiffs try to dress this up as a failure by Olin to monitor the Committee, Plaintiffs' real complaint is with the terms that Olin chose when it restated the Plan in 2014 and 2020, which are settlor, non-fiduciary functions. And Plaintiffs admit that they "do not challenge Olin's decision to create or amend the Plan." Opp., p. 25. *See also Scott*, at p. 13 (holding sponsor is not a fiduciary, as "oversight and control of plan terms" is a settlor function).

If there was any alleged duty to update the Plan's actuarial assumptions,  which Defendants

13

deny, it would have rested on Olin as settlor to revise the Plan, which is not a fiduciary function and cannot give rise to a fiduciary duty claim against either Defendant, as a matter of law.

### C.    Plaintiffs Do Not State a Claim for a Prohibited Transaction.

Plaintiffs also do not state a claim for a prohibited transaction by an alleged fiduciary because there is no "transaction" and no transfer or use of "plan assets." 29 U.S.C. § 1106(a), (b).

First, Plaintiffs do not identify any plan assets. In *Trustees of the Graphic Communications Int'l Union Upper Midwest Local 1 M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719 (8th Cir. 2008), the Eighth Circuit held that an employer's failure to pay premiums due was "not a fiduciary decision concerning plan assets," because "[c]orporate assets do not become plan assets merely because an employer has a corporate obligation to make payments to the plan." *Id.* at 732; Memo, pp. 29-30. Here, Plaintiffs argue that the "plan was deprived of assets" because Olin "avoid[ed] making the contributions that would have been required to fund" the Plan, and they characterize the alleged "underpayment of benefits" as an "ongoing diversion of plan value." Opp., pp. 26-27. However, as the Court held in *Bjorkedal*, money that Olin did not pay into the Plan is not a Plan asset, so any alleged failure to make contributions into the Plan is not a transfer or use of Plan assets under 29 U.S.C. § 1106(a) or (b). Plaintiffs have no answer and ignore *Bjorkedal*.

Second, Plaintiffs do not identify any transaction involving Plan assets.[7] Again, Plaintiffs' sole allegation is that Defendants did not pay the amount of benefits that Plaintiffs believe they should have paid. *Lockheed* lays to rest any claim that this is a prohibited "transaction." In *Lockheed*, the Supreme Court held that an employer did not engage in a "prohibited transaction"

---

[7] Plaintiffs cite *Braden v. Walmart*, 588 F.3d 585 (8th Cir. 2009), and *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) for the general proposition that ERISA prohibits "transactions" that cause a benefit to a party in interest. Opp., p. 26. These cases say nothing about whether there is "transaction" here in the first place. Moreover, unlike this case, both *Braden* and *Harris* involved transactions between the plan and a third-party service provider, which is precisely the type of transaction that 29 U.S.C. § 1106(a) is designed to address.

under ERISA when it conditioned payment of benefits on employees executing a release for the employer's benefit. 517 U.S. at 884, 892-93. The Court held that "the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term in § 406(a) [29 U.S.C. § 1106(a)]." *Id.* at 892-93. Rather, "transactions" subject to § 1106(a) are those that "generally involve uses of plan assets that are potentially harmful to the plan." *Id.* at 893.

D.       **There is No "Loss to the Plan" to State a Claim under 29 U.S.C. § 1132(a)(2).**

Finally, Plaintiffs cannot state a claim under § 1132(a)(2), because the loss they allege is not a "loss to the plan." Rather, the "loss" they allege is a loss of their individual benefits. Am. Compl., ¶¶ 119, 123. It is well-established that a plaintiff's claim to recover benefits is not a loss to the plan. *See e.g.*, *Ciecalone v. Met. Life Ins. Co.,* 2011 WL 1344061, at *2 (E.D. Mo. April 8, 2011); Memo, p. 30 (citing cases). In their Opposition, Plaintiffs flip this around, arguing that the "loss to the plan" was that Olin did not make payments into the Plan that would have been needed to fund higher benefits. Opp., pp. 27-28. But the Plan is a "defined benefit plan," meaning that "plan participants' benefits are fixed," and benefits paid to participants "are not tied to the value of the plan." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020). "[P]lan participants possess no equitable or property interest in the plan." *Id.* Thus, Plaintiffs have no interest in the Plan's overall assets; their only interest is in the benefits they receive, which are not tied to the value of the Plan. Accordingly, Plaintiffs have not alleged any cognizable loss to the plan under § 1132(a)(2).

Plaintiffs argue that § 1132(a)(2) allows for recovery of profits gained through the use of plan assets and state that, by "plan assets," they mean money that Olin did <u>not</u> pay into the Plan. Opp., p. 28. But, again, unpaid contributions are not plan assets. *Bjorkedal*, 516 F.3d at 732. Thus, Plaintiffs cannot claim that Olin profited by use of Plan assets.

<u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint, with prejudice, and for such other relief as the Court deems just and proper.

15

Dated:  July 21, 2025

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Melissa Z. Baris*
David W. Sobelman, #32253 (MO)
Melissa Z. Baris, #49346 (MO)
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Phone – 314.480.1500
David.sobelman@huschblackwell.com
Melissa.baris@huschblackwell.com

*Attorneys for Defendants Olin Corporation and Olin Pension and CEOP Administrative Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2025, I filed the above document with the Clerk's Office using the CM/ECF System for filing and electronic service to all counsel of record.

*/s/   Melissa Z. Baris*

16